Adam S. Belzberg
Mark O. Morgan
STOEL RIVES LLP
600 University Street, Suite 3600
Seattle, WA 98101
Telephone: 206.624.0900

HON. SALVADOR MENDOZA JR.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON
AT YAKIMA

RAMON TORRES HERNANDEZ, and FAMILIAS UNIDAS POR LA JUSTICIA, AFL-CIO, a labor organization,

Plaintiffs,

v.

UNITED STATES DEPARTMENT OF LABOR and EUGENE SCALIA, in his official capacity as United States Secretary of Labor,

Defendants.

No. 1:20-cv-03241-SMJ

BRIEF OF WAFLA AS *AMICUS CURIAE* IN SUPPORT OF DEFENDANTS' RESPONSE TO PLAINTIFFS' REVISED MOTION FOR PRELIMINARY INJUNCTION

BRIEF OF WAFLA

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................ ii

I.  INTRODUCTION .................................................................................... 1

II. STATEMENT OF FACTS ....................................................................... 1

    A.    Wafla ................................................................................................ 1

    B.    The H-2A Program in Washington .................................................. 2

III. ARGUMENT ............................................................................................ 3

    A.    Pay Practices are Shaped by the Law and the Market ..................... 3

    B.    Plaintiffs' Baseless Story that wafla Conspired to Manipulate a Six-Year-Old Wage Survey is a Red Herring ........................................ 6

    C.    Wafla Prevailed and was Awarded Its Attorney Fees and Costs Associated with the Attorney General's Baseless Investigation of Columbia Legal Services and Labor Union Claims ........................ 9

IV. CONCLUSION ...................................................................................... 10

109659223.1 0054844-00001

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*

# TABLE OF AUTHORITIES

Page

**Cases**

*Carranza v. Dovex Fruit Co.*,
 190 Wn.2d 612, 416 P.3d 1205 (2018)......................................................6

*Demetrio v. Sakuma Brothers Farms, Inc.*,
 183 Wn.2d 649, 355 P.3d 258 (2015).................................................4, 5, 6

BRIEF OF WAFLA - ii

109659223.1 0054844-00001

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*

## I. INTRODUCTION

Amicus curiae wafla appreciates the Court's permission to submit an amicus brief, and the opportunity to share its experience serving seasonal employers, and its knowledge of the complex pay systems that apply to this specialized type of work.

## II. STATEMENT OF FACTS

### A. Wafla

Wafla is a 501(c)(6) nonprofit association whose members consist primarily of agricultural employers. Wafla provides human resources assistance, counseling, services, and advice to members. Declaration of Dan Fazio ("Fazio Decl.") ¶ 3. One of wafla's most important HR programs is providing advice to its members concerning the federal H-2A guest worker program. Fazio Decl. ¶ 4. Since 2011, wafla has grown to become one of the largest H-2A service providers in the nation, and Washington State now ranks third in participation in the H-2A program among the 50 states.[1] Fazio Decl. ¶ 5.

The H-2A program is opposed by labor unions, Columbia Legal Services ("CLS"), and other legal services agencies. Their opposition is rooted in a false narrative that intentionally conflates the current H-2A program with the undeniably problematic Bracero program of the 1940s and 1950s, and claims the H-2A program

---

[1] ECF No. 1, ¶ 19; ECF No. 14 ¶ 19.

BRIEF OF WAFLA - 1

somehow displaces U.S. workers with low paid foreign nationals who are treated like slaves. ECF No. 14, ¶ 19. In reality, this is a highly regulated program that imposes strict worker protections with significant penalties for employer violations. Fazio Decl. ¶ 11.

**B.   The H-2A Program in Washington**

Farmers and workers benefit from the legal and stable workforce provided under the H-2A program. Workers – foreign and domestic – employed under an H-2A contract receive higher wages, free housing, better working conditions, and more access to assistance than their peers who work for non-H-2A employers. Fazio Decl. ¶ 10.

Contrary to the claims of Plaintiffs, employers in Washington would not use the H-2A program if they could obtain a sufficient number of U.S. workers to perform time-sensitive seasonal agricultural work. This is true for one simple and overriding reason–the cost. Fazio Decl. ¶ 11. First, it currently costs approximately $10,000 per worker to build housing meeting the standards required by Washington State. *Id*. Next, it costs the employer $1,000 or more per worker each year for the worker to obtain a visa and travel to the U.S. *Id*. Finally, the H-2A employer must

AMICUS BRIEF - 2

agree to a federal wage–the Adverse Effect Wage Rate (AEWR) that has historically been 15 to 30 percent greater than the applicable state minimum wage.[2] *Id*.

### III. ARGUMENT

**A.  Pay Practices are Shaped by the Law and the Market.**

The United States Department of Labor's ("DOL") ETA Handbook 385 instructions for the state wage surveys explicitly recognize that "piece rates with [an] earnings guarantee represent a different method of payment from piece rates without earnings guarantees, and should be listed separately." Handbook 385 at I-141. This is a significant point because nearly every farmer in Washington must pay farm workers at least the state minimum wage.

For Washington farmers that utilize the H-2A program, they must pay the higher of the state minimum wage, federal minimum wage, prevailing wage or

---

[2] In 2019, the Washington state AEWR was $15.03 per hour, 25 percent greater than the state minimum wage of $12.00 per hour. In 2020, Washington state dramatically increased its state minimum wage, but the AEWR was still more than 17 percent greater.

AMICUS BRIEF - 3

AEWR.[3] The AEWR is generally the highest of these and it functions as a prevailing wage for H-2A. In addition to Washington farmers' general obligation to pay this guaranteed wage, changes in the law and market demand have led to increasing use of pure hourly and/or guaranteed hourly plus a production bonus pay systems.

First, an increasing demand from retailers for higher quality fruit has forced many employers to switch to hourly rates to protect the quality of their fruit. Use of a piece rate pay system can encourage farm workers to work faster and therefore increase their pay, but the added harvest speed can also result in increased damage to the fruit and injury to the worker. Farmworker Justice and the National Employment Law Project have argued against piece rate pay, stating that "[p]iece rate payment schemes provide an immediate incentive to boost productivity, but that boost comes at the cost of faster and less careful work." Notably, in an *amicus curiae* brief in *Demetrio v. Sakuma Brother's Farms, Inc.,* 183 Wn.2d 649, 355 P.3d 258 (2015), the advocacy groups acknowledged:

> Piece rates are very low – the average Washington farmworker household earns approximately $17,000 a year meaning that workers must be extremely productive to make a living wage […]

---

[3] The AEWR is set by a federal wage survey which includes wages from all sources – hourly rates, piece rates, and any other bonus. The AEWR in Washington is currently the highest in the nation.

AMICUS BRIEF - 4

> …[p]iece rate payment schemes provide an immediate incentive to boost productivity, but that boost comes at the cost of faster and less careful work. Studies have identified a variety of specific injury and health related risks that are associated with piece rates and show that piece rate work is often time-pressured. Workers feeling the pressure to sustain high levels of effort in order to achieve maximum productivity are discouraged from taking unpaid rest breaks. Piece rates encourage workers to compromise safe work practices in order to maximize their earning potential with low per-unit piece rates.

*Demetrio v. Sakuma Brother's Farms, Inc.,* 2015 WL 893142 (Wash.), 2, 4.

Second, the Washington State Supreme Court's July 2015 decision in *Demetrio* resulted in an immediate and significant shift to paying workers a guaranteed hourly minimum plus an additional production bonus instead of a piece rate. *Demetrio* upended decades of well-settled understanding by farmers about the state's rest break statute by holding that employers who compensate farm workers on a piece rate basis must also pay those workers separately for rest breaks at their "regular rate of pay.". *Demetrio*, 183 Wn.2d at 660-64.

Prior to *Demetrio*, wafla and agricultural employers understood, based on Department of Labor and Industry Guidance, that piece rate pay included rest breaks, non-productive time and everything else that went in to picking that piece of fruit. After *Demetrio*, employers had to scramble to reprogram computer pay systems to comply with the added administrative requirement imposed by the new additional hourly pay for rest breaks.

AMICUS BRIEF - 5

Third, in 2018, the Washington State Supreme Court held that agricultural workers may be paid on a piece rate basis only for the hours in which they are actually engaged in piece rate work. All time spent performing activities outside the scope of the piece rate picking work–like moving ladders or changing fields–had to be paid on a separate hourly basis. *See Carranza v. Dovex Fruit Co.*, 190 Wn.2d 612, 626-27, 416 P.3d 1205 (2018).

For many agricultural employers, the administrative burdens imposed by *Demetrio* and *Carranza* forced them to implement an hourly compensation system with a possible production bonus. Even in 1981, the ETA Handbook 385 recognized the fundamental difference between a pure piece rate–with no guarantee of hourly earnings–and a piece rate accompanied by an underlying guaranteed hourly wage, and thus requires agencies to survey both the piece rate and hourly guaranteed wage. Fazio Decl. ¶ 29. This was true in 1981, and it is true in 2021. *Id*.

B. **Plaintiffs' Baseless Story that wafla Conspired to Manipulate a Six-Year-Old Wage Survey is a Red Herring.**

Prior to 2015, the Washington Employment Security Department ("ESD") conducted its Agricultural Wage and Practice survey every other year. The 2013 survey exclusively focused on piece rate earnings and did not give employers the option to report hourly wages for the tree fruit harvest. Fazio Decl. ¶ 13. Following

AMICUS BRIEF - 6

109659223.1 0054844-00001

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*

that survey, ESD announced that it would begin conducting the survey annually and in accordance with the ETA Handbook 385.  Fazio Decl. ¶ 14.

In May 2015, ESD Manager Cynthia Forland informed wafla that, unlike the prior survey, the 2015 survey would include "hour" in the list of potential units of pay, but would not include hourly plus a piece rate or production bonus in the list of potential units of pay.  Fazio Decl. ¶ 16.  While wafla urged ESD to promote accuracy by also separately surveying wages based on a piece rate with hourly earnings guarantees, the 2015 survey did **not** enable employers to report both the piece if any, and the applicable hourly wage, as required by Handbook 385.  Fazio Decl. ¶ 17, Ex. 1.  Instead, employers were restricted to reporting **either**: (1) a piece rate, or (2) an hourly wage (whether that hourly rate was the Washington minimum wage, the federal AEWR, or some other hourly wage).  Accordingly, wafla encouraged its members to report their hourly wage because it was the only wage that a worker was guaranteed to earn.  *Id*.

Plaintiffs' distaste for an industry's market and liability driven pay practices is insufficient to support a sudden motion for injunctive relief or any other legal action.  Nearly five years ago, in a May 5, 2016 email to a CLS attorney, DOL explained this to CLS stating that "in situations where a prevailing piece rate has been established and an employer chooses not to offer it, the regulations require that

AMICUS BRIEF - 7

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
Telephone 206.624.0900

the employer guarantee the AEWR." Fazio Decl. ¶ 18, Exs. 2, 3. Plaintiffs' have long been aware of the fact that DOL cannot force an employer to pay piece rate. *Id*.

Finally, the record must also be set straight regarding the Fall of 2017 ESD wage survey (that Plaintiffs mistakenly refer to as the "2018 survey"). ECF No. 19 at 20. The preliminary results of the 2017 survey were first issued to stakeholders in spring 2018. Fazio Decl. ¶ 18. It is important for the Court to accurately understand that during the 2017 survey process, ESD sent stakeholders (including wafla, CLS, and FUJ) a draft of the survey results and solicited comments. Fazio Decl. ¶ 19. Following its review of the results, wafla sent a comment to ESD pointing out certain inaccuracies in the survey for a number of tree fruit varieties. *Id*. Agreeing with wafla, ESD published a briefing paper that was consistent with wafla's comments, and gave all of the stakeholders one week to respond to its updated survey. *Id*. There were no further responses from any of the stakeholders, so ESD submitted its updated survey results to DOL (as set out in the briefing paper). Fazio Decl. ¶ 20.

Incredibly on July 25, 2018, seventeen days after Suzi Levine was named the Commissioner of ESD, ESD staff asked DOL to reinsert the data that had been removed during the stakeholder process just two months earlier. Fazio Decl. ¶ 21. This unusual request did not comport with Handbook 385. *Id*. For instance, ESD

AMICUS BRIEF - 8

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*

asked DOL to accept survey results that were nearly 40 percent below the federal threshold. *Id*. There was no notice to stakeholders about this action and no opportunity to comment. *Id*. The 2018 ESD letter to DOL contains incorrect assumptions, unconfirmed data, and unsupported conclusions. Accordingly, DOL declined to make ESD's improper changes. *Id*.

**C.  Wafla Prevailed and was Awarded Its Attorney Fees and Costs Associated with the Attorney General's Baseless Investigation of Columbia Legal Services and Labor Union Claims.**

Following their baseless claim that wafla somehow manipulated the 2015 survey, attorneys from CLS and the Northwest Justice Project met with the Washington State Attorney General's Office on September 29, 2015. They urged the Attorney General's Office ("AGO") to conduct a criminal and civil investigation of wafla. Fazio Decl. ¶ 23, Ex. 7.

The AGO began an investigation of wafla in January 2016, which spanned three years. Fazio Decl. ¶ 24. In December 2016, the Douglas County Superior Court granted wafla's petition to set aside a civil investigative demand ("CID") issued by the AGO. Fazio Decl. ¶ 25, Ex. 8. In September 2018, the Court granted wafla's motion for a preliminary injunction against the AGO regarding its investigation into the lawful advice and information wafla provided to its members

AMICUS BRIEF - 9

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*

about their participation in the 2015 Survey.  Fazio Decl. ¶ 26, Ex. 9.  A Court of Appeals Commissioner agreed with the Superior Court.  Fazio Decl. ¶ 27, Ex. 10.

In September 2019, the AGO formally discontinued its investigation with a finding of no wrongdoing by wafla. Fazio Decl. ¶ 28.  Ultimately, this matter ended poorly for the AGO with wafla being awarded a judgment of $30,452.50 against the AGO for violating the Public Records Act.  *Id*.

## IV.  CONCLUSION

Plaintiffs' Complaint and Motion for Injunction are a misguided attempt to weaponize this Court as a lobby for their own agenda.  The accusations levied against wafla are baseless and irrelevant to the Plaintiff's misguided attempts to force DOL to adopt a pay system favored by Plaintiffs.  Plaintiffs' quest to eliminate the use of the H-2A program springs from a fundamental misunderstanding of the program and the market dynamics at issue for agricultural workers and employers.

109659223.1 0054844-00001

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone 206.624.0900*

DATED: February __, 2021.	STOEL RIVES LLP

_____
Adam S. Belzberg, WSBA 41022
Mark O. Morgan, WSBA 52006
600 University Street, Suite 3600
Seattle, WA 98101
Telephone: 206.624.0900
Facsimile: 206.386.7500
adam.belzberg@stoel.com

Attorneys for Defendants

AMICUS BRIEF - 11

# CERTIFICATE OF SERVICE

I hereby certify that on February 1, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which in turn automatically generated a Notice of Electronic Filing (NEF) to all parties in the case who are registered users of the CM/ECF system. The NEF for the foregoing specifically identifies recipients of electronic notice.

Dated this 1st day of February 2021.

        s/ Mark O. Morgan
Mark O. Morgan, WSBA 52006
Stoel Rives LLP
600 University Street, Suite 3600
Seattle, WA 98101
Telephone: 206.624.0900
Facsimile: 206.386.7500
Email: mark.morgan@stoel.com

*Attorneys for Amicus Curiae*
*Washington Farm Labor Association*

AMICUS BRIEF - 12