Lori Jordan Isley
Blanca Rodriguez
Andrea Schmitt
Hannah Woerner
COLUMBIA LEGAL SERVICES
6 South Second Street, Suite 600
Yakima, WA 98901
(509) 575-5593

Kathleen Phair Barnard
BARNARD IGLITZIN & LAVITT LLP
18 West Mercer Street, Ste. 400
Seattle, WA 98119-3971
(206) 285-2828

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| RAMON TORRES HERNANDEZ and FAMILIAS UNIDAS POR LA JUSTICIA, AFL-CIO, a labor organization,<br><br>Plaintiffs,<br><br>v.<br><br>AL STEWART, in his official capacity as Acting United States Secretary of Labor, and UNITED STATES DEPARTMENT OF LABOR,<br><br>Defendants. | No. 1:20-CV-03241-SMJ<br><br>PLAINTIFFS' REPLY ON MOTION FOR PRELIMINARY INJUNCTION |

TABLE OF CONTENTS

Table of Authorities ........................................................................................ iii

I.    INTRODUCTION ............................................................................... 1

II.    FACTUAL BACKGROUND ............................................................... 1

III.    LEGAL STANDARDS ........................................................................ 2

IV.    ARGUMENT ........................................................................................ 4

    A.    Plaintiffs' Have Article III Standing, Having Established Concrete and Particularized Injury Based on Challenged PWRs ......................... 4

    B.    Plaintiffs Are Likely to Succeed on the Merits. ................................... 7

        1.    USDOL's Failure to Consider Worker Survey Data is Arbitrary and Capricious ............................................................ 7

        2.    USDOL's Interjection of the Hourly Guarantee into the Prevailing Wage Methodology Violates the APA ...................... 9

            a.    USDOL failed to comply with the APA's notice-and-comment requirements. ..................................................... 9

            b.    USDOL's use of the hourly guarantee is arbitrary and capricious. ..................................................................... 11

        3.    USDOL's Disregard of Statistically Valid Data is Arbitrary and Capricious .................................................................... 14

    C.    The Relief Sought by the Workers is Appropriate and Necessary to Prevent Harm ............................................................................... 15

PLAINTIFFS' REPLY ON MOTION FOR
PRELIMINARY INJUNCTION - ii

COLUMBIA LEGAL SERVICES
6 South Second Street, Suite 600
Yakima, WA 98901
(509) 575-5593

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez*,
    458 U.S. 592 (1982)...........................................................................................5

*Am. Fed'n of Labor & Cong. of Indus. Organizations (AFL-CIO) v. Dole*,
    884 F.2d 597 (D.C. Cir. 1989)............................................................................1

*Arizona State Legislature v. Arizona Indep. Redistricting Comm'n*,
    576 U.S. 787 (2015)...........................................................................................7

*Comite De Apoyo A Los Trabajadores Agricolas v. Solis*,
    No. CIV.A 09-240, 2010 WL 3431761 (E.D. Pa. Aug. 30, 2010)......................6

*Hernandez v. Sessions*,
    872 F.3d 976 (9th Cir. 2017) ..........................................................................3, 4

*Mendoza v. Perez*,
    754 F.3d 1002 (D.C. Cir. 2014)....................................................................6, 11

*O'Bannon v. Nat'l Collegiate Athletic Ass'n*,
    802 F.3d 1049 (9th Cir. 2015) ............................................................................4

*Planned Parenthood v. U.S. Dep't of Health & Human Servs.*,
    946 F.3d 1100 (9th Cir. 2020) ............................................................................5

*Sw. Ctr. for Biological Diversity v. U.S. Forestry Serv.*,
    100 F.3d 1443 (9th Cir. 1996) ............................................................................2

*United States v. Students Challenging Regulatory Agency Procedures (SCRAP)*,
    412 U.S. 669 (1973)...........................................................................................4

*Zirkle Fruit Co. v. USDOL*,
    1:19-CV-03180-SMJ, 2019 WL 7819802 (E.D. Wash. Sept. 11, 2019) ................................................................................................................4

PLAINTIFFS' REPLY ON MOTION FOR
PRELIMINARY INJUNCTION - iii

COLUMBIA LEGAL SERVICES
6 South Second Street, Suite 600
Yakima, WA 98901
(509) 575-5593

*Zirkle Fruit Co. v. USDOL*,
   1:19-CV-03180-SMJ, 2020 WL 1917343 (E.D. Wash. Jan. 27, 2020) ................................................................................................2, 3, 10, 11

*Zirkle Fruit Co. v. USDOL*,
   442 F. Supp. 3d 1366 (E.D. Wash. 2020) .................................................8, 10, 11

**Regulations**

75 Fed. Reg. 6884 (Feb. 12, 2010) ........................................................................2

84 Fed. Reg. 36168 (Jul. 26, 2019) ......................................................................11

85 Fed. Reg. 70445 (Nov. 5, 2020) .......................................................................2

PLAINTIFFS' REPLY ON MOTION FOR
PRELIMINARY INJUNCTION - iv

COLUMBIA LEGAL SERVICES
6 South Second Street, Suite 600
Yakima, WA 98901
(509) 575-5593

## I.   INTRODUCTION

USDOL's validation of prevailing wages in Washington's tree fruit harvest reducing prevailing piece-rates to $12 per hour is arbitrary and capricious.

## II.   FACTUAL BACKGROUND

USDOL justifies the reduction of higher prevailing piece-rate wages to the state minimum wage asserting employers are predominantly paying hourly wages for harvest activities. ECF No. 23 at 2. In support of this alleged dramatic market shift, is one declaration from a USDOL wage and hour investigator who alleges hourly rates are used for some tasks, *see* ECF No. 25 ¶ 4, which does not come close to countering the overwhelming documentation that farmworkers continue to perform tree fruit harvesting for piece-rate wages well in excess of the state minimum wage. *Accord* Declaration of Victoria Ruddy ¶ 11; Declaration of Martin Rios ¶¶ 4, 6-8; Second Supplemental Declaration of Arasele Bueno ¶ 2, Ex. 38 at 6, ¶ 3, Ex. 39 at 16 & ¶ 4, Ex. 40 at 134-35, 290 & 294; ECF No. 4 ¶¶ 4, 7-8; ECF No. 5 ¶ 12; ECF No. 6-7 at 2; ECF No. 6-11 at 3; ECF No. 7 ¶¶ 14-15; ECF No. 14 ¶¶ 36, 42-48; *see also Am. Fed'n of Labor & Cong. of Indus. Organizations (AFL-CIO) v. Dole*, 884 F.2d 597, 601-02 (D.C. Cir. 1989) (as far back as the *Bracero* program USDOL recognized piece rates were used to incentivize labor such that most workers earned in excess of hourly rates). USDOL's assertion that prevailing piece-rate wages have not been almost entirely eliminated for tree fruit harvest is

PLAINTIFFS' REPLY TO MOTION FOR
PRELIMINARY INJUNCTION - 1

COLUMBIA LEGAL SERVICES
6 South Second Street, Suite 600
Yakima, WA 98901
(509) 575-5593

belied by the wages validated in which of 51 prevailing piece-rate wages for harvest activities, only five remain. Second Supplemental Declaration of Rachael Pashkowski, ¶¶ 2-3, Ex. 12; *see infra* n.4.

USDOL acknowledges its charge to ascertain "the prevailing wage being paid on the open labor market." See [ECF No. 23](#) at 2. USDOL also recognizes absent the influx of H-2A workers, market wages would increase, 75 Fed. Reg. 6884, 6891 (Feb. 12, 2010), and that the prevailing wage is the last line of defense against depression of market wages, as it safeguards wages in activities at which workers earn higher wages, *see* 85 Fed. Reg. 70445, 70450 (Nov. 5, 2020). Yet USDOL has deprived workers of the market wages it is mandated to protect.

### III. LEGAL STANDARDS

It is appropriate for this Court to consider "extra-record" evidence the Workers have provided under the APA standard of review. A court may consider "extra-record" evidence when doing so is "necessary to explain agency decisions." *Zirkle Fruit Co. v. USDOL*, 1:19-CV-03180-SMJ, 2020 WL 1917343, at *2-3 (E.D. Wash. Jan. 27, 2020) (citing *Sw. Ctr. for Biological Diversity v. U.S. Forestry Serv.*, 100 F.3d 1443, 1450 (9th Cir. 1996)). As in *Zirkle,* it is appropriate for this Court to consider "extra-record" evidence as necessary to determine

PLAINTIFFS' REPLY TO MOTION FOR
PRELIMINARY INJUNCTION - 2

COLUMBIA LEGAL SERVICES
6 South Second Street, Suite 600
Yakima, WA 98901
(509) 575-5593

whether the agency has considered all relevant factors and has explained its decision. *Id.*

The Workers meet the preliminary injunction standard demonstrating that an injunction is necessary. *See* ECF No. 19. The Workers seek injunctive relief that preserves the status quo: a labor market in which harvest is paid at higher piece-rate wages and farmworker wages are consistently rising.

> The rules governing the relief that may be granted by preliminary injunction are not "hard and fast rules, to be rigidly applied to every case regardless of its peculiar facts," because "[t]he infinite variety of situations in which a court of equity may be called upon for interlocutory injunctive relief requires that the court have considerable discretion in fashioning such relief."

*Hernandez v. Sessions*, 872 F.3d 976, 999 (9th Cir. 2017) (citation omitted).

Although the Ninth Circuit has recognized the controversial nature of its use of separate standards for prohibitory and mandatory injunctions, *id.* at 997, even if the relief the Workers are seeking can be characterized as a mandatory injunction, they meet that standard. Mandatory injunctions are permissible when: "extreme or very serious damage will result that is not capable of compensation in damages, and the merits of the case are not doubtful." *Id.* at 999 (citation and quotation marks omitted). Here the decrease in farmworkers wages and shrinking opportunity for piece-rate harvest jobs will seriously harm families already living in poverty in a way that is not compensable in damages, and the merits of the case

are not doubtful. *See* ECF No. 19 at 28-33. Moreover, as in *Hernandez,* the injunction sought here is not "unprecedented relief." 872 F.3d at 999. This Court has enjoined the enforcement of prevailing wage rates and directed that the difference be deposited into a trust account pending resolution. *Zirkle Fruit Co. v. USDOL*, 1:19-CV-03180-SMJ, 2019 WL 7819802, at *10 (E.D. Wash. Sept. 11, 2019). The Workers here seek an order enjoining the enforcement of prevailing wage rates and directing USDOL to increase harvest wage rates for immediate payment by all employers using the H-2A program, given the irreparable harm of a wage decrease, the extraordinary difficulty of finding farmworkers in the future, and the administrative burden of an escrow procedure for multiple employers.

## IV.    ARGUMENT

**A. Plaintiffs' Have Article III Standing, Having Established Concrete and Particularized Injury Based on Challenged PWRs.**

Both Plaintiff Torres Hernandez (Mr. Torres) and FUJ have standing to sue. An injury for purposes of standing need not be large nor precisely quantifiable. *United States v. Students Challenging Regulatory Agency Procedures (SCRAP)*, 412 U.S. 669, 689 n.14 (1973) (cited in *O'Bannon v. Nat'l Collegiate Athletic Ass'n*, 802 F.3d 1049, 1069 (9th Cir. 2015)). In fact, loss of opportunity is injury for purposes of standing. *O'Bannon*, 802 F.3d at 1069. This is a central precept of the "competitor standing" doctrine, which provides that when the challenged action

PLAINTIFFS' REPLY TO MOTION FOR
PRELIMINARY INJUNCTION - 4

COLUMBIA LEGAL SERVICES
6 South Second Street, Suite 600
Yakima, WA 98901
(509) 575-5593

deprives the plaintiff of an opportunity, the plaintiff need not apply for an opportunity that is not suited for him; instead, he must simply be ready to apply if a suitable opportunity arises. *See Planned Parenthood v. U.S. Dep't of Health & Human Servs.*, 946 F.3d 1100, 1108–09 (9th Cir. 2020).

Mr. Torres's injury in this case is the loss of opportunity in the job market as a result of the depression of wages and working conditions caused by USDOL's arbitrary prevailing wage findings. This is an injury to the precise interest the H-2A statutory scheme is intended to protect—local workers' wages and working conditions. *Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez*, 458 U.S. 592, 596 (1982). USDOL mischaracterizes Mr. Torres's declaration testimony as stating that he does not intend to work for an H-2A employer this year. *See* ECF No. 23 at 10 n.3. Instead, he states that he will be forced to prioritize his job search away from H-2A employers because wages are now set at rates too low to support his family. *See* ECF No. 4 ¶¶ 14-15. His job search promises to be a challenge. With the elimination of piece rates for almost the entire cherry harvest this year, *see* ECF No. 21-1, the number of jobs that give him the opportunity to make more than $30 an hour is significantly reduced, *see* ECF No. 4 ¶ 8, especially given that approximately 41,000 jobs in the state are controlled by the terms of H-2A

PLAINTIFFS' REPLY TO MOTION FOR
PRELIMINARY INJUNCTION - 5

COLUMBIA LEGAL SERVICES
6 South Second Street, Suite 600
Yakima, WA 98901
(509) 575-5593

contracts,[1] and his home county—Yakima—has the most H-2A workers of any county in the state.[2]

This case is similar to *Mendoza v. Perez*, 754 F.3d 1002, 1015 (D.C. Cir. 2014), in which the D.C. Circuit held that local sheepherders not currently doing sheepherding work had standing to challenge administrative guidance that changed prevailing wages under the H-2A program because their injury was the loss of opportunity for jobs with acceptable wages and working conditions. The court noted that the workers reasonably "conclude[d] that formally applying for jobs would be futile when they would not accept a job offering the prevailing wage and working conditions [depressed by the challenged guidance]." *Id.* at 1014; *accord Comite De Apoyo A Los Trabajadores Agricolas v. Solis*, No. CIV.A 09-240, 2010 WL 3431761, at *5 (E.D. Pa. Aug. 30, 2010) (farmworker union had standing to challenge changes to H-2B rules where it alleged members competed with H-2B

---

[1] In 2020, Washington employers were certified for more than 27,000 H-2A workers but needed more than 41,000 workers total—those additional 14,000 jobs were filled by the local workforce. See ECF No. 20 ¶ 6. For perspective, ESD reports that there are just under 100,000 workers in annual average employment in Washington agriculture. Second Supp. Bueno Decl. ¶ 5, Ex. 41.

[2] *Id.* at ¶ 6, Ex. 42 at 360.

PLAINTIFFS' REPLY TO MOTION FOR PRELIMINARY INJUNCTION - 6

COLUMBIA LEGAL SERVICES
6 South Second Street, Suite 600
Yakima, WA 98901
(509) 575-5593

workers and the challenged rules adversely affected their wages, working conditions, and "ability to obtain and retain jobs.").

Though a plaintiff's injury needs only be "fairly traceable" to the challenged action, *Arizona State Legislature v. Arizona Indep. Redistricting Comm'n*, 576 U.S. 787, 800 (2015), here, there is a direct causal connection between the new and inaccurate prevailing wages and Mr. Torres's lost opportunity. He knows from 35 years of experience as a farmworker that he will not make nearly as much money at a farm where cherry harvest is paid hourly, rather than by the piece. ECF No. 4 ¶¶ 2, 14. Mr. Torres, and FUJ through him, have standing to bring this case.

**B. Plaintiffs Are Likely to Succeed on the Merits.**

**1. USDOL's Failure to Consider Worker Survey Data is Arbitrary and Capricious.**

ESD first began conducting the worker survey in 2016, in response to industry manipulation of the wage survey process. *See* ECF No. 14 ¶¶ 49-53; ECF No. 6-8; ECF No. 6-9; ECF No. 6-11 at 2. ESD has continued to conduct the worker survey, with funding provided by USDOL, asserting that the survey is conducted pursuant to Handbook 385, regulatory authority, and annual TEGLs. *See* ECF No. 6-31 at 4-5; ECF No. 6-32. Multiple TEGLs assert that worker surveys are "[u]sed to verify employer survey results." ECF No. 6-1 at 16, 65, 78 & 92. The worker survey instrument itself states: "Your survey responses will help to

identify wages and employment practices in Washington State. Your answers are extremely important." ECF No. 26-1 at 2 & 6.

This Court does not need to analyze the issue of whether the worker survey has been "abolished" under the Paperwork Reduction Act (PRA) because here the survey was actually conducted. *See* ECF No. 23 at 25; *Zirkle Fruit Co. v. USDOL*, 442 F. Supp. 3d 1366, 1376 (E.D. Wash. 2020) (finding ESD was not required to conduct in-person employer interviews which had *not* been conducted). The worker survey overwhelmingly confirmed the continued prevailing practice in the Washington labor market of paying tree fruit harvest wages by the piece rate. ECF No. 6-32 at 3-4; *see supra* II.

This Court should reject USDOL's arguments attempting to discredit the worker survey methodology. *See* ECF No. 23 at 27-32. USDOL had an obligation to direct ESD to take corrective action to ensure the worker survey protected market wages if it believed the survey was inaccurate, but it failed it to do so. Contrary to USDOL's assertion, three of the sample sizes meet Handbook requirements. *See* ECF No. 6-31 at 4 (an average of 10 percent of workers included in the sample must be interviewed); ECF No. 6-2 at 6 [I-116]; ECF No. 23 at 28 (Gala, Granny Smith and Honeycrisp samples meet 10% threshold of reported workers); *see also* ECF No. 6-13 at 19 (Honeycrisp reported employment is 3,938 and estimated employment is 30,166; not 5,249 and 36,131 as stated in ECF No.

23 at 28). While ESD expressed some reservations related to surveying unemployment insurance claimants, ESD noted the necessity of that limitation – to obtain worker contact information – and concluded it had "received a robust enough sample" to make reasonable comparisons. ECF No. 6-32 at 2. USDOL's effort to justify wholly disregarding the worker survey results, while ignoring irregularities in the employer survey methodology, cannot be rationalized and therefore is arbitrary and capricious. *See* ECF No. 19 at 17-26; *infra* IV.B.2 & 3.[3]

### 2. USDOL's Interjection of the Hourly Guarantee into the Prevailing Wage Methodology Violates the APA.

#### a. USDOL failed to comply with the APA's notice-and-comment requirements.

The hourly guarantee concept was first used in Washington State in 2016 at the request of the industry. ECF No. 6-3 at 5; *see* ECF No. 14 ¶ 58. When advocates asked ESD to examine the use of this practice based on the catastrophic

---

[3] USDOL fails to refute that H-2A employers appear to have reported paying *less* than the prevailing wage in the blueberry harvest and USDOL relied on those responses to publish a *lower* prevailing wage. *See* ECF No. 19 at 15-16; *see also* id. at 22 & ECF No. 21 ¶¶ 5-11 (no explanation of why employers reported paying an hourly guarantee *below* the state minimum wage to more than a third of Bosc pear workers).

results of the 2019 survey, ESD responded that it was following USDOL guidance and would defer to USDOL's determination. *See* ECF No. 6-6 at 2-3; ECF No. 6-4 at 2; ECF No. 6-3 at 3-7.

The Handbook does not include the hourly guarantee in the wage-finding process. *See* ECF No. 6-2 at 6-8 (Section I.C.3. – Prevailing Wage Rate Findings) [I-116-118]. In contrast, the Handbook's wage-finding process details the special procedures for base rate-bonus combinations. *Id.* at 7-8 [I-117-118]. There are no similar instructions for an "hourly guarantee." *See id.* USDOL does not identify any TEGL or other written policy defining the hourly guarantee concept or describing its use. USDOL also does not clarify whether an hourly guarantee is a statutorily required minimum or must be a rate that exceeds statutory minimums. *See* ECF No. 23 at 13.

Unlike in *Zirkle,* where this Court concluded USDOL was permitted to alter the Handbook's requirement for in-person employer interviews which was announced through changes in ETA-232 forms and through multiple TEGLs, the hourly guarantee concept was *never* included in the Handbook's wage finding process nor clarified through TEGLs. *See* 442 F. Supp. 3d at 1376. USDOL's PRA statement merely announces that it was adding instructions to "reduce the need to refer to the ETA Handbook 385 and to make locating the prevailing wage setting methodology easier for SWA staff." ECF No. 24-5 at 4; *see also* ECF No. 24-4 at 5

| PLAINTIFFS' REPLY TO MOTION FOR PRELIMINARY INJUNCTION - 10 | COLUMBIA LEGAL SERVICES<br>6 South Second Street, Suite 600<br>Yakima, WA 98901<br>(509) 575-5593 |
|---|---|

§ 3 & 6 § 4 (form restates Handbook language and does not change the wage-finding section). USDOL never announced it was making a substantive change in the wage finding process. *See id.* As in *Mendoza v. Perez*, 754 F.3d 1002, 1024-25 (D.C. Cir. 2014), substantive changes in prevailing wage methodology which have the effect of eliminating wage protections must be made subject to rulemaking. *See also* 84 Fed. Reg. 36168, 36171 (Jul. 26, 2019) (proposed rule changing prevailing wage methodologies). The only change USDOL ever announced was moving the instructions from the Handbook to the form; a change not equivalent to interjecting the hourly guarantee into the wage-finding process.

  **b.  USDOL's use of the hourly guarantee is arbitrary and capricious.**

  Moreover, as in *Zirkle,* even if USDOL was not required to engage in rulemaking, its use of the hourly guarantee is arbitrary and capricious as the change is both irrational and unannounced. *See* 442 F. Supp. 3d at 1376-77. Unlike the changes made to the employer survey in *Zirkle,* USDOL is unable to point to any guidance defining the concept. ESD explained that it was waiting for guidance from USDOL, but there is no evidence in the record that any such guidance was provided. ECF No. 6-6 at 2.

  In addition, USDOL's failure to define "hourly guarantee" impugns all of the employer responses. USDOL argues that hourly guarantees are obviously in use based on employer reporting, but that conclusion is specious given that neither

the survey respondents nor USDOL knew what "hourly guarantee" meant. *See* ECF No. 6-5 at 8, 10, 12, 14, 17-18; ECF No. 23 at 17-18.[4] For example, if an hourly guarantee is simply the statutory minimum wage, there is no basis to distinguish wage rates with an hourly guarantee and those without, as the same minimums apply to all. In addition, while USDOL contends it can distinguish H-2A employer survey respondents, it does not demonstrate that the range of hourly guarantees reported were in fact above statutorily required minimums for the reporting employers. *See* ECF No. 23 at 17-18.

For these very reasons, when Plaintiffs demonstrated the impact of the hourly guarantee on piece-rate wages, they treated all hourly guarantees at or below the AEWR as piece-rates without an hourly guarantee and concluded that

---

[4] Plaintiffs maintain that hourly guarantees which exceed statutory minimums are not in common usage and would have the counter effect of limiting high productivity incentivized by piece rates. *See* ECF No. 19 n.6; ECF No. 4 ¶ 7; ECF No. 5 ¶ 14; Ruddy Decl. ¶ 12. The Walum declaration states she has seen "instances" of non-H-2A employers using an hourly guarantee of the AEWR or higher. ECF No. 25 ¶ 5. Review of ETA-232 data provided shows 86-100% of employers report hourly guarantees at or *below* the AEWR. ECF No. 21 ¶¶ 7 &10.

PLAINTIFFS' REPLY TO MOTION FOR
PRELIMINARY INJUNCTION - 12

COLUMBIA LEGAL SERVICES
6 South Second Street, Suite 600
Yakima, WA 98901
(509) 575-5593

three harvest activities—berries, Skeena cherries, and Yellow cherries—would have resulted in a prevailing piece-rate wage. ECF No. 21 ¶ 6.

USDOL's contention that only hourly guarantees at or below the state minimum wage should be treated the same as piece rates without an hourly guarantee is flawed for two reasons. *See* ECF No. 23 at 22-23. First, H-2A employers offering an hourly guarantee of the AEWR are simply offering the hourly rate required of all H-2A employers. Second, unless USDOL provides analysis distinguishing H-2A and non-H-2A employers (which USDOL has not done), it is not possible to determine whether an hourly guarantee reported exceeds a required statutory minimum and therefore should be treated differently than a piece rate without an hourly guarantee.

USDOL also cannot dismiss so easily the evidence of employer manipulation of the survey. The Workers have described a concerning pattern of conduct, from ESD-documented survey manipulation in 2015, to advocacy to insert the hourly guarantee concept in 2016, to ongoing efforts to eliminate prevailing piece-rate wages in 2017, and culminating with the recent statement that piece rates should not be used to set wage rates for the H-2A program (when higher paying prevailing piece-rate wages are in fact mandated by law). ECF No. 14 ¶¶ 50-52, 56, 61-66; ECF No. 6-8; ECF No. 6-9; ECF No. 6-11; ECF No. 20-2 at 4; *see also supra* n.4.

PLAINTIFFS' REPLY TO MOTION FOR PRELIMINARY INJUNCTION - 13

COLUMBIA LEGAL SERVICES
6 South Second Street, Suite 600
Yakima, WA 98901
(509) 575-5593

Finally, the suggestion that recent advocacy on behalf of farmworkers justifies the reduction of piece-rate wages to the hourly minimum wage is not supported. See ECF No. 23 at 24. USDOL has a statutory duty to protect market wages. Government sources document continued increases in farmworker wages— not the marked decrease that would accompany abandonment of all piece rates. See ECF No. 7 ¶¶ 4-13. The articles cited do not support the contention that many employers have switched to a straight hourly wage. See ECF No. 26-2 at 3 (opining *Carranza* decision *may* lead to changes in the piece-rate system); ECF No. 26-3 at 2 (contending *Carranza* decision will make it difficult to use the piece-rate pay system).

### 3. USDOL's Disregard of Statistically Valid Data is Arbitrary and Capricious.

After Plaintiffs filed their preliminary injunction brief, USDOL validated additional prevailing wages with no explanation as to why these had not been previously calculated. ECF No. 23 at 16; ECF No. 23-1 at 2. Additional apple harvesting rates were also published at $12 per hour. *Id.* Notably, two additional rates for apple thinning were published at $15.00 per hour in contrast to the commonly understood practice of harvest wages generally exceeding wages for other activities like pruning and thinning. See ECF No. 6-3 at 5. USDOL does not refute that it has discretion to calculate additional prevailing wages where

PLAINTIFFS' REPLY TO MOTION FOR PRELIMINARY INJUNCTION - 14

COLUMBIA LEGAL SERVICES
6 South Second Street, Suite 600
Yakima, WA 98901
(509) 575-5593

thresholds varied a few percentage points from the handbook "guidelines." *See* ECF No. 14 at 24-26; ECF No. 6-11 at 2 & 4. Even USDOL does not view the thresholds as necessary, as USDOL's final rule, since withdrawn by the Biden administration, would have dramatically lowered sample sizes. *See* Second Supp. Bueno Decl. ¶ 7; https://www.dol.gov/sites/dolgov/files/ETA/oflc/pdfs/H-2A-2020-final-rule-1_8_2021-Clean-with-disclaimer.pdf at 121.

### C. The Relief Sought by the Workers is Appropriate and Necessary to Prevent Harm.

The workers ask the Court not simply to revert to the previous prevailing wages, but to order wage rates that would account for the reliable 5% increase in wages seen each year. USDOL itself asserts that use of wage data from earlier years would result in inaccurate wage determinations as annual surveys are intended to provide USDOL "current labor market information" necessary to ensure there is no adverse effect on local workers' wages and working conditions pursuant to their statutory mandate. ECF No 24-5 at 8.

For the foregoing reasons, the Court should grant the preliminary injunction requested by Plaintiffs.

DATED this 2nd day of February, 2021.

| COLUMBIA LEGAL SERVICES | BARNARD IGLITZIN & LAVITT LLP |
|---|---|
| s/Lori Jordan Isley<br>Lori Jordan Isley, WSBA #21724<br>Blanca E. Rodriguez, WSBA #27745<br>Andrea Schmitt, WSBA # 39759<br>Hannah Woerner, WSBA #53383<br>Attorneys for Plaintiffs<br>6 South 2nd Street, Suite 600<br>Yakima, WA 98901<br>Phone: (509) 575-5593, x. 217<br>Fax: (509) 575-4404<br>E-mail: lori.isley@columbialegal.org;<br>blanca.rodriguez@columbialegal.org;<br>andrea.schmitt@columbialegal.org;<br>hannah.woerner@columbialegal.org | s/Kathleen Phair Barnard<br>Kathleen Phair Barnard, WSBA #17896<br>Attorney for Plaintiff Familias Unidas por la Justicia<br>18 West Mercer Street, Ste. 400<br>Seattle, WA 98119-3971<br>Phone: (206) 285-2828<br>Fax: (206) 378-4132 (fax)<br>E-mail: barnard@workerlaw.com |