1   Andrea Schmitt
    Blanca Rodriguez
2   Joachim Morrison
    Hannah Woerner
3   COLUMBIA LEGAL SERVICES
    315 Holton Ave., Suite 201
4   Yakima, WA 98902
    (509) 575-5593
5
    Kathleen Phair Barnard
6   BARNARD IGLITZIN & LAVITT LLP
    18 West Mercer Street, Ste. 400
7   Seattle, WA 98119-3971
    (206) 285-2828
8
    Trent Taylor
9   FARMWORKER JUSTICE
    725 S. Skinker Blvd., Suite 2N
10  St. Louis, MO 63105
    (614) 584-5339

11               UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF WASHINGTON
12

13  RAMON TORRES HERNANDEZ, and          No. 1:20-CV-03241-TOR
    FAMILIAS UNIDAS POR LA JUSTICIA,
    AFL-CIO, a labor organization;
14

15      the Workers,
        vs.                              PLAINTIFFS' MOTION FOR
16                                       PRELIMINARY INJUNCTION

17  UNITED STATES DEPARTMENT OF
    LABOR and JULIE SU, in her official
    capacity as Acting United States Secretary   Noting date: July 21, 2023
18  of Labor,                            6:30 p.m.
                                         Without oral argument
19  and

20
    WASHINGTON STATE EMPLOYMENT
21  SECURITY DEPARTMENT and CAMI
    FEEK, in her official capacity as
22  Commissioner,
                        Defendants.
23

PLAINTIFFS' MOTION FOR PRELIMINARY                COLUMBIA LEGAL SERVICES
INJUNCTION - 1                                    315 Holton Ave., Suite 201
                                                  Yakima, WA 98902
                                                  (509) 575-5593

# I.    INTRODUCTION

Defendant U.S. Department of Labor has a practice of allowing growers using H-2A temporary foreign workers in fruit harvests to pay the hourly Adverse Effects Wage Rate (AEWR), despite the fact that DOL has established prevailing piece-rates for those harvests—prevailing rates that allow fruit harvesters to earn significantly more per hour than the AEWR. DOL's actions in granting these labor certifications are in direct violation of DOL's own regulations at 20 C.F.R. §§ 655.122(l) and 655.120(a) requiring payment of the higher of the AEWR or the prevailing rate, and the Congressional mandate that foreign workers not be admitted at wages and working conditions that will adversely affect wages and working conditions of similarly employed U.S. workers. These unlawfully approved H-2A job orders, numbering at least 100 and affecting more than 16,000 workers, ECF No. 165, are already reducing employment opportunities for local workers, and they will significantly reduce the wages of farmworkers in the impending cherry harvest, as well as in the berry and apple harvests that follow shortly thereafter, *see* ECF No. 162 ¶¶ 8-10.

Plaintiff farmworkers (the Workers) ask the Court for a preliminary injunction prohibiting DOL from certifying Washington State fruit growers to import foreign harvest workers at the AEWR when there is a published prevailing piece rate applicable to the work unless DOL determines that the AEWR is, in fact,

PLAINTIFFS' MOTION FOR PRELIMINARY
INJUNCTION - 2

COLUMBIA LEGAL SERVICES
315 Holton Ave., Suite 201
Yakima, WA 98902
(509) 575-5593

higher than the applicable prevailing piece rate, and ordering DOL to rescind unlawfully certified job orders currently in effect unless the employer offers the prevailing piece rate.[1] The Workers also ask the Court to order DOL to repost the Washington prevailing wages it recently eliminated from its website. DOL has not explained why it changed its website, but the change will likely encourage even more unlawful "AEWR-only" H-2A applications.

## II.    STATUTORY AND FACTUAL BACKGROUND

### A. Statutory and Regulatory Background

Congress permits agricultural employers to import foreign H-2A workers only if the Secretary of Labor first certifies that:

> (A) there are not sufficient [U.S.] workers who are able, willing, and qualified, and who will be available at the time and place needed, to perform the labor or services involved in the petition, and,
> (B) the employment of [foreign workers] in such labor or services **will not adversely affect the wages and working conditions of workers in the United States similarly employed.**

---

[1] Unlawful certifications Plaintiffs seek to have rescinded are listed in the declaration of Heide Hernández-Jiménez, and they include those in which the grower offered the AEWR only, and those where the grower offered a piece rate but reserved the right to pay only the AEWR at any time it chooses. *See generally* ECF No. 165.

PLAINTIFFS' MOTION FOR PRELIMINARY
INJUNCTION - 3

COLUMBIA LEGAL SERVICES
315 Holton Ave., Suite 201
Yakima, WA 98902
(509) 575-5593

8 U.S.C. §1188(a)(1); 8 USC §1101(a)(15)(H)(ii)(A) (emphasis added). In order to implement Congress's mandate that DOL protect the wages and working conditions of U.S. farmworkers, DOL regulations require agricultural employers seeking to import foreign H-2A workers to offer the *highest* of: (1) the Adverse Effects Rate (AEWR), a special hourly minimum hourly wage set for the H-2A program by state, (2) the DOL-approved prevailing wage for the work performed in that geographical region, (3) an applicable collectively bargained wage, or (4) the federal or state minimum wage. 20 C.F.R. §§655.120(a), 655.122(l). As a practical matter, because there are very few collectively bargained farm wages in Washington State and because the hourly AEWR is higher than Washington's minimum wage, these regulations require Washington-State employers seeking foreign H-2A workers to offer the higher of the AEWR or the prevailing wage.

DOL contracts with the Washington State Employment Security Department (ESD) to survey agricultural employers each year to determine the prevailing wages paid to Washington farmworkers. In conducting the survey, ESD follows DOL's methodological requirements.

**B. The Workers' Claims**

The Workers, who are Washington State fruit harvesters, filed this Administrative Procedure Act case in 2020 to challenge the lawfulness of the methodology by which DOL determines prevailing wages for Washington-State

PLAINTIFFS' MOTION FOR PRELIMINARY
INJUNCTION - 4

COLUMBIA LEGAL SERVICES
315 Holton Ave., Suite 201
Yakima, WA 98902
(509) 575-5593

harvest workers as well as its policies for implementing the prevailing wages once found. Among other things, the Workers challenged DOL's policy of certifying employers to import foreign workers at the hourly AEWR *even when there is a higher piece-rate prevailing wage applicable to the harvest work at issue.* The Workers allege that this policy is contrary to DOL's own regulations and contrary to the Congressional mandate that DOL only certify the importation of foreign workers at wages and working conditions that will not adversely affect similarly employed U.S. workers. ECF No. 86 at ¶¶ 138-141; 166.

## C. Procedural History

In response to the Workers' challenges to DOL's prevailing wage survey methodology, Judge Salvador Mendoza, Jr. issued a preliminary injunction in March 2021 prohibiting DOL from using the results of its 2019 prevailing wage survey during the 2021 harvest season.[2] The court found that the Workers were likely to succeed on the merits of their claim that DOL's survey methodology was

---

[2] A Survey date reflects the year the data was collected. Because the survey is conducted late in the year and because of the time it takes to compile the data and issue the results, surveys are not used to set wages until a year or sometimes two years after the data was collected.

COLUMBIA LEGAL SERVICES
315 Holton Ave., Suite 201
Yakima, WA 98902
(509) 575-5593

arbitrary and capricious and ordered DOL to continue to use the prevailing rates set by the 2018 survey, which had found piece rate wages to be prevailing in all fruit harvests other than raspberries. *Id.* at 33. In December 2021, Judge Mendoza modified the injunction to allow DOL to use the results of the 2020 Survey going forward, not because the methodological problems had been solved, but because the wages found, like those in the 2018 Survey, were generally piece rate wages for harvest work, as Plaintiffs contended they should be.

Because ESD withdrew the results of the 2021 Survey before DOL could validate them, 3d. Supp. Decl. Schmitt ¶¶ 3-5, the prevailing wages derived from the 2020 Survey, mandated by the Court's December 2021 injunction, remained in effect from the December 2021 injunction through the present. As recently as May 10, 2023, DOL listed the 2020 prevailing rates on its Agricultural Online Wage Library with a notation that read: "The above prevailing wages for Washington must be applied in evaluating agricultural job orders submitted and processed under the H-2A Program for work performed or anticipated for 2023-2024." 3d. Supp. Decl. Schmitt ¶ 10.

### D. Facts Relevant to This Motion

Between November 22, 2022 and March 30, 2023, DOL certified at least 37 Washington State fruit growers to import foreign workers for 2023 cherry, berry, and apple harvests at the hourly AEWR, despite the fact that the published

prevailing wages in those crops were piece rates. [3] ECF No. 165 ¶¶ 7-44. In that period, DOL also approved at least 67 clearance orders in which the grower reserves the right to pay the AEWR, rather than the prevailing piece rate, if it so chooses during the season. *Id.* at ¶¶ 44-49. DOL has a practice of approving clearance orders such as these, and the Workers believe it will continue to do so in the future. ECF No. 86, ¶¶ 138-141.

In addition, sometime between May 10 and May 13, 2023, DOL removed the 2020 Survey prevailing wages from its Online Wage Library, leaving the message that "there is no data available for this state." 3d. Supp. Decl. Schmitt ¶ 11. DOL offered no public explanation as to the meaning of, or reason for, the removal of the 2020 prevailing wages from its website.

If it is DOL's position that the prevailing wages have expired because of the

---

[3]The prevailing wages derived from the 2020 survey results were published on January 24, 2022 in response to this Court's December 2021 order.  On information and belief, in the fall of 2022, DOL added this a statement to those wages saying they must be applied to job orders for 2023-2024. *See* 3d. Supp. Decl. Schmitt ¶ 7. Those wages are summarized at ECF No. 113 at 3, and they contain general harvest prevailing piece rates for apple, cherry, and berry.

PLAINTIFFS' MOTION FOR PRELIMINARY
INJUNCTION - 7

COLUMBIA LEGAL SERVICES
315 Holton Ave., Suite 201
Yakima, WA 98902
(509) 575-5593

new regulation establishing that prevailing wages expire one year from publication, that position is irrational, considering that if that regulation applied to the wages in question here, they would have expired on January 24, 2023.  That DOL continued to post the wages as the mandatory rates after that date, knowing that employers and workers were relying on those rates, *see* 3d. Supp. Decl. Schmitt ¶ 13, belies any claim that the new regulation required their removal.

It is undisputed that prevailing piece rates generate higher earnings than the hourly AEWR in harvest work. This Court found that to be true in March 2021 when it held that the Workers would be irreparably harmed by historically piece-rate activities suddenly being paid at the AEWR. ECF No. 57 at 26, 28. The Workers have submitted two expert declarations with this motion, the first from agricultural economist Philip Martin, who explains that piece rates are intended to allow workers to earn more than the applicable hourly minimum wage, including the AEWR, to give them an incentive to work more quickly. Martin Decl., Ex. A at 5. The second declaration, from agricultural economist Zachariah Rutledge, offers a statistical analysis of DOL's National Agricultural Workers Survey data showing that *at least 70%* of harvest workers earn more than the AEWR when harvesting by the piece in the Northwest Region (which includes Washington), and those workers earn an average of *41% more an hour* than harvest workers paid at an hourly rate. Rutledge Decl., Ex A at 5. Major industry players, such as the

Washington Farm Labor Association (WAFLA), an association comprising hundreds of agricultural employers, and Stemilt Growers, the largest grower in the state, confirmed in filings filed with the Washington Supreme Court in 2015 and in public testimony that piece rates generating earnings of more than $20/hour[4] were the prevailing method of payment for fruit harvesting in Washington State. *See* ECF No. 86 ¶¶ 35-50; *see also* Stemilt 2023 H-2A Clearance Order No. H-300-22344-633246 at 21, https://api.seasonaljobs.dol.gov/job-order/H-300-22344-633246 (estimating piece-rate wages at hourly equivalent of $21.20 per bin at an average picking rate of three-fourths bin per hour). Industry statements in the media about worker productivity and worker declarations confirm that workers make well above the current AEWR of $17.91 at current piece rates. Dominguez Decl. ¶ 10; ECF No. 118 ¶¶ 4-7; ECF No. 116 ¶¶ 5-8; ECF No. 117 ¶¶ 6-7; ECF No. 115 ¶¶ 6-8; ECF No. 112-9 at 3, ECF No. 112-3 at 3, ECF No. 112-11 at 6-7. Cherry harvesters stand to make nearly 50% less than they would normally make, *see* ECF No. 4, ¶ 8, and apple harvesters can easily suffer losses of 20% or much more, *see* Dominguez Decl. ¶ 15; other worker declarations cited, *supra*. Even if

---

[4] The AEWR in 2015 was $12.42 an hour, so the AEWR was a 38% decrease from piece-rate earnings as described by industry.

PLAINTIFFS' MOTION FOR PRELIMINARY
INJUNCTION - 9

COLUMBIA LEGAL SERVICES
315 Holton Ave., Suite 201
Yakima, WA 98902
(509) 575-5593

there were doubt as to whether the prevailing piece rates in the crops at issue are higher than the AEWR, which there is not, DOL did nothing to make that determination despite its regulatory duty to ensure payment of the *higher* of the AEWR or the prevailing rate.

Allowing employers to import foreign workers at the AEWR when there is a prevailing piece rate applicable to the crop activity will cause U.S. workers irreparable injury. U.S. workers seeking jobs with those employers will be forced to accept the lower earnings associated with payment by the hour than they are used to at the prevailing piece rate. If they decline to accept such a wage cut the employer can refuse to hire them and fill his jobs with foreign workers who are willing to work by the hour. This threat to Washington workers is significant: use of the H-2A program in Washington has increased by more than 1,000% in just ten years, ECF No. 112-7 at 12, with 28,221 H-2A jobs having been certified in only the first three quarters of fiscal year 2022. ECF No. 112 at ¶ 2. Moreover, the effects of allowing growers to pay the AEWR will not be limited to the upcoming season but will continue into the future as employers paying hourly rates to foreign workers will be surveyed and establish hourly rates as the "prevailing rates" in future surveys. A stark example of such an effect can be seen in the now-withdrawn 2021 Survey findings, released by ESD in July 2022. There, Cripps Pink apple harvest has an hourly prevailing wage finding at $16.43 an hour – the

PLAINTIFFS' MOTION FOR PRELIMINARY
INJUNCTION - 10

COLUMBIA LEGAL SERVICES
315 Holton Ave., Suite 201
Yakima, WA 98902
(509) 575-5593

same rate as the 2021 AEWR, ECF No. 112-1 at 10, despite the fact that Cripps Pink had an applicable prevailing piece rate of *$30.00 a bin* throughout 2021, *see* ECF No. 113 at 3. Some large H-2A grower(s) were unlawfully paying the hourly wage instead of the piece rate, and that wage rate became the prevailing wage for the next year.

DOL's policy also allows growers to make and end-run around the prevailing wage system, getting the productivity benefits of piece-rate pay while still undercutting market wages. In a 2023 clearance order, approved on December 16, 2022, DOL has allowed large producer Washington Fruit Company to assert that it will pay the AEWR only for apple harvest, and in an addendum to the job offer assert that it will, if it chooses, pay piece rates, in the form of a "weekly production bonus per bin," designed to "ensure that the worker's total weekly compensation is not less than the product of the number of bins picked multiplied by" bin rates that are *lower than the applicable prevailing bin rates* for those apple crops. 2023 Washington Fruit Clearance Order No. H-300-22323-597703 at 1, 27, https://api.seasonaljobs.dol.gov/job-order/H-300-22323-597703.

## III.    ARGUMENT

### A.    Legal Standard

A plaintiff seeking a preliminary injunction "must meet one of two variants of the same standard." *Alliance for the Wild Rockies v. Pena*, 865 F.3d 1211, 1217

COLUMBIA LEGAL SERVICES
315 Holton Ave., Suite 201
Yakima, WA 98902
(509) 575-5593

(9th Cir. 2017). Under the original *Winter* standard, a plaintiff must establish that they are (1) "likely to succeed on the merits"; (2) "likely to suffer irreparable harm in the absence of preliminary relief"; (3) that "the balance of equities tips in [its] favor"; and (4) that "an injunction is in the public interest." *Disney Enterprises, Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017) (alteration in original) (quoting *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008)). When the government is a party, the last two factors—the balance of equities and the public interest—merge. *E. Bay Sanctuary Covenant v. Trump*, 950 F.3d 1242, 1271 (9th Cir. 2020). Alternatively, under the "sliding scale" variant of the *Winter* standard, preliminary relief is appropriate when a plaintiff raises "serious questions going to the merits—a lesser showing than likelihood of success on the merits," the "balance of hardships tips sharply in the plaintiff's favor," and where the other two *Winter* factors (likelihood of irreparable harm and the public interest) "are satisfied." *Alliance for the Wild Rockies*, 865 F.3d at 1217 (internal quotation marks omitted, emphasis in the original). the Workers are entitled to a preliminary injunction under either of the *Winter* standards.

>        **B.**    **The Workers Are Likely to Succeed on Their Claim that
>                  DOL's Approval of Job Orders Offering the AEWR Only is
>                  Unlawful When There Is a Published Prevailing Piece Rate**

It is "a fundamental principle of federal law is that a federal agency must follow its own procedures." *Torres v. U.S. Dep't of Homeland Sec.*, No. 17CV1840

JM(NLS), 2017 WL 4340385, at *6 (S.D. Cal. Sept. 29, 2017) (citing *Morton v. Ruiz*, 415 U.S. 199, 233-35 (1974) ("[W]here the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures."); *Nicholas v. INS*, 590 F.2d 802, 809 (9th Cir. 1979); *United States v. Heffner*, 420 F.2d 809 (4th Cir. 1969) (courts must overturn agency actions that do not scrupulously follow the regulations and procedures promulgated by the agency itself)).

Here DOL's regulations unequivocally command that, as a condition of receiving certification to import foreign workers, an employer *must* offer the higher of the AEWR or the prevailing wage. 20 C.F.R. §655.120(a). Nothing in the regulations permits DOL to ignore this provision and certify an employer at the hourly AEWR, at least without ascertaining whether the AEWR is higher than an applicable piece-rate prevailing wage. DOL's decision to do so anyway with respect to the certifications at issue is a clear violation of DOL regulations, and the Workers are therefore likely to succeed on this claim. The Workers are also likely to succeed on their claim that DOL's actions also violate 8 U.S.C. §§ 1101(a)(15)(H)(ii)(a) and 1188, prohibiting adverse effect on local wages.

Indeed, the last time DOL attempted to ignore its regulations and certify employers at the hourly AEWR despite the existence of a higher prevailing piece rate wage the Department of Justice refused to defend DOL's actions, leading DOL to confess error. *See Morrison v. U.S. Dep't of Labor*, 713 F.Supp. 664, 666-667,

PLAINTIFFS' MOTION FOR PRELIMINARY
INJUNCTION - 13

COLUMBIA LEGAL SERVICES
315 Holton Ave., Suite 201
Yakima, WA 98902
(509) 575-5593

669 & n.10 (S.D.N.Y. 1987) (after certifying apple growers at the hourly AEWR despite the existence of a higher prevailing piece rate, DOJ refused to defend and court entered order finding DOL had violated its prevailing wage regulation in certifying growers at the AEWR). DOL's actions in this case are no more defensible than they were in the *Morrison* case.

DOL recognizes that the role of the prevailing wage is to protect wages in activities, such as Washington State fruit harvest, where the *local wages are higher than average farmworker wages*, represented in the AEWR. *See* 75 FR 6884-01, 6893 (Feb. 12, 2010); 85 Fed. Reg. 70445, 70450 (Nov. 5, 2020); 88 Fed. Reg. 12760, 12775 (March 30, 2023). DOL has recognized the critical importance of protecting prevailing wages in agriculture in the unbroken series of temporary agricultural worker programs stretching back to World War II. *See* 54 Fed. Reg. 28037, 28038 (July 5, 1989) (final H-2A Rule stating "[i]f the prevailing wage for the occupation in the labor market of intended employment is higher, the employer must offer and pay that wage."); 52 Fed.Reg. 20496, 20504 (June 1, 1987) (Initial H-2A regulations stating "DOL will strictly enforce the requirement that H-2A employers pay their U.S. and H-2A workers no less than the greater of the AEWR or the local prevailing wage for each agricultural activity"); 46 Fed. Reg. 4568, 4569 (Jan. 16, 1981) (H-2 Rules, same); 32 Fed. Reg. 4569, 4571 (Mar. 28, 1967) (H-2 program rule stating "Where the prevailing wage for a crop activity in an area

of employment is higher than [the AEWR] applicable under paragraph (a)(1) of this section, such higher prevailing rate shall be offered and paid."); 29 Fed. Reg. 19101, 19102 (Dec. 30, 1964) (same); Migrant Labor Agreement of 1951, Article 15 (available at U.S. Code Cong. and Adm. Service 1951, p. 2721.) ("Bracero" agreement between U.S. and Mexico, stating that USDOL would certify a wage as not "adversely affecting" US workers only when the employer offered at least "the prevailing wage rate paid to domestic workers for similar work at the time the work is performed. . . within the area of employment."); Samuel Liss, The Concept and Determination of Prevailing Wages in Agriculture During World War II, Agricultural History 8 (January 1950) (Under the federal Farm Labor Transportation Program during World War II, prevailing wages were required to be paid "to maintain existing wage levels and to preserve current wage payment practices" and to "prevent[] program-recruited workers from exercising a depressive effect on current levels of agricultural wages.").

Simply put, prevailing wage protections are the means by which DOL has chosen "to protect domestic laborers from competition with cheap imported labor." *U.S. v. Morris*, 252 F.2d 643, 646 (5th Cir. 1958). Prevailing wages far predate the hourly-minimum AEWR, and the advent of the AEWR did not supplant prevailing wage requirements. 54 Fed. Reg. 28037, 28040 (July 5, 1989); 29 Fed. Reg. 1902 (Dec. 30, 1964) (refers to prevailing rates; incorporates references to Bracero

PLAINTIFFS' MOTION FOR PRELIMINARY
INJUNCTION - 15

COLUMBIA LEGAL SERVICES
315 Holton Ave., Suite 201
Yakima, WA 98902
(509) 575-5593

agreement, which guaranteed piece-rate pay if it was the prevailing practice).

The offer of prevailing wages is critical to ensuring that local workers are not pushed out of the labor market. Notably, the regulations emphasize that a grower must not only pay prevailing wages, but that it must also *let local workers know* it plans to do to so by "offer[ing]" and "advertis[ing] in its recruitment" those wages. 20 C.F.R. § 655.120(a); *see also* 20 C.F.R. § 655.122(q). This is because if depressed wages are offered, "the ultimate determination of availability [of local workers] within the meaning of the INA cannot be made since **U.S. workers cannot be expected to accept employment under conditions below the established minimum levels**. *Florida Sugar Cane League, Inc. v. Usery*, 531 F. 2d 299 (5th Cir. 1976)." 20 C.F.R. § 655.0. (emphasis added; case citation include in regulation text).

The prevailing wages that were posted on DOL's website until mid-May protected local piece-rate wages for apple, cherry, and berry harvests. *See* ECF No. 113 at 3. DOL posted them in compliance with this Court's December 2021 injunction which required use of the 2020 Survey prevailing wages until they were replaced by new, lawful prevailing wages.  Since ESD withdrew its 2021 survey results from consideration, no new wages have yet been established to justify removal of the 2020 Survey wages. Their unexplained removal, despite DOL's assertion that they were effective for jobs in 2023 and 2024, and despite growers'

COLUMBIA LEGAL SERVICES
315 Holton Ave., Suite 201
Yakima, WA 98902
(509) 575-5593

and workers' reliance on them, is unlawful if the removal was intended to eliminate those prevailing wage requirements. *See* 3d. Supp. Decl. Schmitt ¶ 13 (explaining evidence that growers and workers relied on the posted 2020 wages by requesting and obtaining H-2A labor certifications for the 2023 season during the period January 24, 2023 to May 10, 2023 at the posted 2020 wages). DOL should be required to re-post those wages.  Moreover, whatever DOL intended by changing its website, the 2020-Survey prevailing wages posted until May 2023 apply to H-2A applications filed and approved during the period January 2022 to May 2023 when they were posted, which includes all of the approvals that Plaintiff seeks to have rescinded by this motion. *See* 3d. Supp. Decl. Schmitt ¶ 14.

### C.     The Workers Have Shown That Irreparable Harm Is Likely

DOL's requirement that employers seeking foreign workers must pay the *higher* of the AEWR or the prevailing piece rate flows from the recognition that payment of less than the higher of those wages will, inevitably, adversely affect the wages of U.S. workers, putting downward pressure on local wages as more and more foreign workers are imported at a substandard wage. The workers who are employed under the unlawfully certified job orders will suffer wage loss of 20% to 50% or more, beginning in this June's cherry harvest. *Supra* at 11. Industry-wide, the magnitude of wage loss to workers is staggering—likely millions of dollars. ECF No. 86 ¶ 64; ECF No. 6-12 at 3 (WAFLA president celebrates that removing

piece rates in apple will "save the industry millions.").

Once a job order with a lower AEWR wage has been certified by DOL, the period for recruiting U.S. workers begins. At that point U.S. workers must either accept the lower wage or lose their jobs to foreign workers. Either way, U.S. workers are irreparably injured. Moreover, the injury will not be limited to lost wages and job opportunities in the 2023 season. Once employers are permitted to import foreign workers at hourly rates, those rates will be reported on next year's survey with the potential to make hourly rates the actual prevailing method of payment. *See supra* at 10-11.

As this Court noted in March 2021, when wages fall even a few percentage points, local farmworker families suffer significant hardship because many already live in or at the edge of poverty. ECF No. 57 at 27-28; *see also* ECF No. 4 ¶ 12; ECF No. 5 ¶ 17; *see* ECF Nos. 6-30 at 27-28 and 6-26 at 4-5 (average farmworker family incomes below poverty); ECF Nos. 6-28 at 3, 9-11 and 6-27 (staggering food insecurity); ECF Nos. 6-29 and 6-23 at 13 (limited access to healthcare).

This Court has already held in its March 1, 2021 injunctive order that the Workers will suffer irreparable harm from payment by the hour in traditionally piece-rate harvest tasks, noting both that workers would be deprived of millions of dollars in wages industry-wide, and that local workers would be altogether driven away from jobs by sub-market wages and replaced with H-2A workers. ECF No.

COLUMBIA LEGAL SERVICES
315 Holton Ave., Suite 201
Yakima, WA 98902
(509) 575-5593

57 at 26-29. The Court also recognized that the harm is irreparable because the Workers have no practical path to collecting lost wages even if they succeed in this case, as the case seeks only injunctive relief, and farmworkers have a lack of access to legal resources. ECF No. 57 at 28. These conclusions are consistent with the court's findings in two recent H-2A wage cases in the Eastern District of California. *UFW v. United States Dept. of Labor*, 509 F. Supp. 3d 1225, 1249 (E.D. Cal. 2020) ("[r]educing farmworkers wages by approximately four or five percent would. . .clearly cause substantial harm to plaintiffs' members and their families."); *United Farm Workers v. Perdue*, No. 1:20-cv-01452-DAD-JLT, 2020 WL 6318432, at *15-17 (E.D. Cal. Oct. 28, 2020) (finding irreparable harm from lost farmworker wages).

### D. The Remaining Equitable Factors Favor Granting a Preliminary Injunction

With respect to the other equitable factors, the Court previously found that those factors favored granting preliminary relief. The Court found that the "[d]epression of local farmworker wages" which results for DOL violating its own wage regulation "causes the exact harm that Congress sought to prevent in the H-2A program," and that the public interest would be served by ensuring that Congress's intent was not frustrated. ECF No. 57 at 29-30. To counterbalance the Workers' hardships, the government is "required to present evidence that its

COLUMBIA LEGAL SERVICES
315 Holton Ave., Suite 201
Yakima, WA 98902
(509) 575-5593

significant interests would be seriously hampered." *Cuviello v. City of Vallejo*, 944 F.3d 816, 834 (9th Cir. 2019). Defendants have presented no such evidence.

### E.  This Court Should Not Require the Workers to Post a Bond

Plaintiffs do not have the financial means to post bond, ECF No. 4 ¶ 2; ECF No. 162 ¶¶ 4-5. The district court has discretion "as to the amount of security required, *if any*" and "may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (internal quotation marks and citation omitted). There is no harm to USDOL from enjoining its unlawful action. Moreover, given the public interest underlying the litigation and that requiring bond would effectively deny access to judicial review, waiver of any bond is appropriate. *See Van De Kamp v. Tahoe Reg'l Planning Agency*, 766 F.2d 1319, 1325 (9th Cir. 1985); *UFW v. USDOL*, 509 F. Supp. 3d 1225, 1255 (E.D. Cal. 2020) (finding bond not warranted in granting nationwide injunction preventing the freezing of the AEWR).

## IV.   CONCLUSION

For the foregoing reasons this Court should rule that DOL's policy of approving "AEWR-only" clearance orders is unlawful and enjoin DOL from certifying H-2A applications at the AEWR when there is a prevailing piece rate in the crop activity, including rescinding and correcting labor certifications issued for

PLAINTIFFS' MOTION FOR PRELIMINARY
INJUNCTION - 20

COLUMBIA LEGAL SERVICES
315 Holton Ave., Suite 201
Yakima, WA 98902
(509) 575-5593

the 2023 harvest season at the AEWR in crops with a prevailing piece rate. Finally, DOL should be enjoined to re-post the 2020 prevailing wages on its website until such time as new, valid prevailing wages have been established.

DATED this 6th day of June, 2023.

*Attorneys for the Workers*

COLUMBIA LEGAL SERVICES

s/ Andrea Schmitt
Andrea Schmitt, WSBA # 39759
Blanca E. Rodriguez, WSBA #27745
Joachim Morrison, WSBA #23094
Hannah Woerner, WSBA #53383
315 Holton Ave., Suite 201
Yakima, WA 98902
Phone: (509) 575-5593, x. 217
Fax: (509) 575-4404
E-mail:
andrea.schmitt@columbialegal.org;
blanca.rodriguez@columbialegal.org;
joe.morrison@columbialegal.org;
hannah.woerner@columbialegal.org

FARMWORKER JUSTICE

s/Trent Taylor
Trent Taylor, Ohio State Bar
Assn # 91748
(admitted *pro hac vice*)
725 S. Skinker Blvd., Suite 2N
St. Louis, MO 63105
Phone: (614) 584-5339
E-mail: ttaylor@farmworkerjustice.org

BARNARD IGLITZIN & LAVITT LLP

s/Kathleen Phair Barnard
Kathleen Phair Barnard, WSBA #17896
Attorney for Plaintiff Familias Unidas por la Justicia
18 West Mercer Street, Ste. 400
Seattle, WA 98119-3971
Phone: (206) 285-2828
Fax: (206) 378-4132 (fax)
E-mail: barnard@workerlaw.com